### PHILLIPS *vs.* HELMBOLD.

1. A fund in court, under a foreclosure suit, directed to be transferred to the credit of a suit for specific performance against the mortgagor, adjudged bankrupt while these proceedings were pending, and to be subject to equities accordingly.

2. The fund, *held* to belong to the assignee of the bankrupt, but retained in court, subject to a formal application by the purchaser under the foreclosure, (complainant in the suit for specific performance) for indemnity out of the same, for money paid by him in purchasing an outstanding title, superior to the bankrupt's, to a part of the mortgaged premises, which he had contracted to sell to such purchaser, but to which he had no title at the time of making the contract, upon which the suit for specific performance was brought; and, also, for indemnity for expenses of the foreclosure suit, which were necessary, in order to free the title from the lien of the inchoate right of dower of the bankrupt's wife.

3. Interest on money ordered to be paid into court, and paid in with such money, by the purchaser, not allowed him, he having been in possession of the premises ever since the making of the order.

4. An attachment levied on the bankrupt's estate, after the commencement of proceedings in bankruptcy, and before the adjudication, is not a lien on the fund superior to the title of the bankrupt's assignee. The assignment vests in the assignee all the bankrupt's estate as it was at the filing of the petition in bankruptcy.

5. That the assignment to such bankrupt's assignee was not recorded in the county where the lands lie, cannot aid such attachment. The recording of the assignment is not essential to the validity of the transfer, and the failure to record it does not affect the title and rights of the assignee.

6. The limitation declared by the second section of the bankrupt act, that a suit by or against an assignee, touching the property and rights of the bankrupt, must be brought within two years, does not extend to or include an application by the assignee for moneys paid into court, belonging, in part at least, to the bankrupt's estate, and directed to remain in court to answer an alleged claim against it, when established.

On application for surplus money.

*Mr. H. M. Lummis,* for Lewis J. Phillips.

*Mr. S. B. Ransom,* for Wyatt, assignee in bankruptcy, representing claim of Hudson and Menet.

*Mr. Joseph Coult,* for Helmbold's assignee in bankruptcy.

*Mr. W. Z. Larned,* (of New York,) for Mrs. Helmbold.

THE CHANCELLOR.

On the 15th of November, 1871, Henry T. Helmbold was the owner of the mortgaged premises, which were sold under the execution in the foreclosure suit in this court, brought by Joel Parker and others against Henry T. Helmbold and others. They were then subject to the mortgage of $35,000, which was foreclosed in that suit. On that day he entered into a written agreement with Lewis J. Phillips, for the sale of the property to the latter, for $70,000, in which sum was to be included the amount of that mortgage, the payment of which Phillips was, consequently, to assume. The deed was to be delivered on the 29th of November, 1871, and the title was to be in fee simple absolute, and satisfactory to the counsel of Phillips, and free and clear of all right of dower, and other liens and encumbrances of every description, except the mortgage, and to be conveyed by full covenant warranty deed, in which Helmbold's wife was to join. Helmbold having failed to comply with his agreement, Phillips, on the

18th of December following, filed his bill in this suit for specific performance. Helmbold did not appear, and on the 8th of February, 1872, the complainant was ordered to proceed to prove the allegations of his bill, and to bring on the hearing of the cause, *ex parte.* The cause having been brought to hearing, for further directions on the pleadings and the proofs taken in pursuance of that order, an order of reference to a master was made on the 9th of May, 1872, to ascertain, compute and report the nature and amounts of the encumbrances, by way of mortgage, tax, or otherwise, on the premises. On the 25th of July following, the master reported that there was, upon the premises, the mortgage above mentioned, for $35,000 and interest; that it was given to secure the payment of seven bonds, of $500 each, with interest, six of which were held by Joel Parker and others, commissioners, and the other was held by the trustees for the support of public schools for the State of New Jersey; that there were due on the mortgage, $36,429.17; and that there was due to Phillips the sum of $776.50, paid by him for taxes on the property, and interest thereon, and that there was due on a judgment, recovered in the Supreme Court by Hudson and Menet, the sum of $18,924.53. The suit in which this judgment was recovered was commenced by attachment, on the 4th of May, 1871. On the 25th of July, 1872, a final decree was made in the suit, directing Phillips to pay into this court $13,629.69, the balance of the purchase money remaining after deducting therefrom the amount due on the mortgage and judgment, and the amount due Phillips for taxes paid by him, and interest, and that, immediately on such payment, Helmbold should specifically perform the agreement, and convey the property to Phillips, by deed, with general warranty and the usual full covenants, subject to the encumbrances reported by the master; and that Phillips be allowed, out of the purchase money, the amount of those encumbrances, $56,370.31, with interest from the date of the report; and he was thereby authorized to pay, cancel and discharge those encumbrances out of the sum so allowed to

him, and to take from the lienors, and surrender to Helm-bold, on request, proper receipts, vouchers, and acquittances therefor. Phillips did not pay the money into court. The judgment was assigned by Hudson and Menet to Siegmund I. Meyer, on the 24th of July, 1872, the day before the final decree was entered. Meyer caused the property to be sold, under execution issued on the judgment. At the sale, which took place on the 26th of November, 1872, Phillips bought the property for $250, and received from the sheriff a deed therefor accordingly. He did not pay off the mortgage. It was foreclosed, and, at the sale under the execution, Phillips bought the property for $68,500, and, in pursuance of an order in the foreclosure suit, paid into this court $15,259.56, the amount ordered to be paid into court, in this suit, includ-ing interest from the date of the final decree in this suit; the right, however, was reserved to Phillips, in the order, to apply for repayment to him of the interest. For the rest of the bid, over the amount due on the mortgage, with costs and execution fees, the sheriff was permitted to accept the receipt of Phillips as owner of the equity of redemption. It appears that Hudson and Menet issued an attachment against Helmbold, on the 10th of May, 1872, for $7556, which was levied on the property on the next day. This attachment was not reported by the master in this suit, as a lien on the premises. Judg-ment was entered in that attachment on the 8th of Novem-ber, 1872, for $7891.68. A petition in bankruptcy was filed against Helmbold on the 14th of March, 1872. Under it he was adjudged a bankrupt on the 28th of September following, and on the 4th of November following, George L. Trask was appointed his assignee under those proceedings.

In the foreclosure suit, Phillips and his wife filed an answer, claiming that, under the sale under the judgment and execution, the former obtained the estate which Helmbold had in the mort-gaged premises on the 16th of May, 1871, the time when the attachment in the suit in which judgment was entered became a lien on the mortgaged premises, and that that estate was an absolute and indefeasible estate of inheritance in fee simple,

subject only to the lien of the mortgage, and claiming that, therefore, Hudson and Menet had no title to the property or the proceeds thereof under their second attachment. Hudson and Menet answered, setting up their second attachment and their claim of lien thereunder, and denying the validity of the sale under the judgment and execution as against the lien which they claimed to have acquired by virtue of their second attachment. Their denial of the validity of the sale as against them, was based on the ground that the sale took place under a judgment which Phillips was bound to pay off. They also insisted that that sale ought not to be permitted to be set up against them, because it was a surprise to them, owing to the fact that the sheriff misled them as to the time when the sale, which they intended to attend to protect their interest, would take place. There being no dispute as to the mortgage, a sale of the premises was decreed in the foreclosure suit, and directions were given to bring into court the amount directed to be paid into court by the decree for specific performance, with interest thereon, from the date of that decree, as above stated.

The assignee in bankruptcy has filed his petition in this suit, praying that the money in court may be ordered to be transferred to this suit, and may be paid to him. This application is resisted by Phillips, and by Wyatt, assignee in bankruptcy of Menet, who, at the time of his bankruptcy, (since the making of the final decree in the foreclosure suit,) owned the claim of Hudson and Menet. Wyatt answered the petition. Phillips claims that he is entitled to be paid out of the money his expenses, including counsel fees, and cost of searches incident to perfecting the title; for he claims that he permitted the foreclosure to take place, in order to rid the property of the inchoate right of dower of Mrs. Helmbold, and he also claims that he was compelled to buy an outstanding title superior to Helmbold's for half an acre of the mortgaged premises. Wyatt opposes the claim of Helmbold's assignee, so far as regards the amount which the former claims to be due on the second attachment, on the ground that the title of Helmbold's assignee to the money is inferior, and

subject, to the lien of the attachment under which Wyatt claims; but no question is made as to the truth of the facts alleged in the petition in this cause, as to the petition and adjudication in bankruptcy against Helmbold, and the appointment of the assignee thereunder, and his acceptance of the trust. All the parties in interest in this matter have been heard by brief, on this application. Phillips, on the pleadings and evidence in the foreclosure suit, is entitled to the whole fund, by virtue of the sheriff's sale to him under the judgment assigned to Meyer. But the fund, though paid in in that suit, must be transferred to the credit of this, and will be subject to equities accordingly. Inasmuch as it has not yet been transferred, no order will be made in reference to it, except for its transfer. I shall, however, proceed to consider the questions raised by the parties litigant.

The claim of Helmbold's assignee to so much of the fund as Helmbold himself would be entitled to, would be allowed. Wyatt insists that the judgment in the second attachment is binding on this court, notwithstanding the provision of the bankrupt law and the proceedings in bankruptcy against Helmbold. That attachment was issued after the petition in bankruptcy against Helmbold was filed. The bankrupt law (§ 14) provides that, as soon as the assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in the assignee, although the same is then attached on mesne process, as the property of the debtor, &c. At the time when the attachment in question was issued, there had been no adjudication of bankruptcy against Helmbold, but there had been a petition in bankruptcy filed. The subsequent adjudication and assignment conveyed Helmbold's property to his assignee, and the

assignee's title, by relation, retroverted to the commencement of the proceedings in bankruptcy. The assignee, therefore, became entitled to Helmbold's interest in the property attached, clear of the attachment. Nor can the objection that the assignment in bankruptcy was not recorded in Monmouth county, in which the premises in question are, avail the objector.

The bankrupt law, indeed, directs that the assignment be recorded; but it has been repeatedly held that the recording of the assignment is not essential to the validity of the transfer to the assignee, and is not designed to operate as under the state registry acts. *Bump on Bankruptcy* (*7th ed.*) 124. Nor can the objection based on the limitation declared by the second section of the bankrupt law, prevail. That section provides that no suit at law or in equity shall, in any case, be maintainable by or against the assignee, or by or against any person claiming an adverse interest touching the property and rights of property of the bankrupt, in any court, unless it be brought within two years from the time the cause of action accrued for or against the assignee.

The limitation does not extend to or include such an application as that under consideration. *In Re Masterton*, 4 *Nat. Bank. Reg.* 180, 553; *Sedgwick* v. *Casey, Ib.* 161, 496; *Davis* v. *Anderson*, 6 *Ib.* 145. Though the decree in the foreclosure suit, directing the payment of money into court, contains a provision that part of the money shall remain to answer the claim of Hudson and Menet, when established, and their costs of suit, yet that direction has not the force or effect of an adjudication as against Helmbold's assignee. Helmbold's assignee would be required to do equity before he would be permitted to take the fund. If, as alleged, Helmbold proves to have had no title to the half acre, there would be no justice in permitting his assignee to take out of this court the price paid by Phillips, under the contract between him and Helmbold, for it. Under that contract the latter was bound to convey the property in fee simple, free of dower and all encumbrances, and by deed of warranty with full

covenants, and he was decreed to convey it accordingly. He has, in fact, made no conveyance. He did not appear in the suit. When his assignee comes into court, and asks that the money which has been directed to be paid in, be paid over to him, and it is made to appear that at the time of making the contract Helmbold had no title for a part of the premises which he undertook to sell to Phillips, and that since the decree the latter has come to the knowledge of the fact, this court would do equity between the parties in the matter, and deduct from the fund for Phillips' benefit, a sum sufficient to indemnify him under the circumstances. And this indemnity would be extended to the costs of the proceedings for foreclosure, for Helmbold agreed and was decreed to convey the property free of dower. No wrong appears to have been done to Mrs. Helmbold by the proceedings in foreclosure. She acquiesces in those proceedings, and is willing to abide by them, and to look to the fund for satisfaction of her claim in respect to dower. Phillips would, therefore, as between him and Helmbold, or the assignee in bankruptcy of the latter, be allowed the costs of foreclosure and sale, but no counsel fees or expenses of searching records beyond those which have been already allowed in the foreclosure suit. As to Phillips' claim to be allowed to withdraw the amount paid in for interest on the money directed to be paid in in this suit: It is admitted that he has been in possession of the premises ever since the making of that decree. No reason for this claim is urged, except that his title was not complete until the sale under the foreclosure took place. That would not entitle him to withhold the interest. There will be an order that the fund be transferred to the credit of this cause. As the case stands it would not be equitable to make any order disposing of the fund; for Phillips, under the circumstances, should have an opportunity to make formal application for indemnity in the respects above considered. Otherwise an order would be made directing the payment of the fund to Helmbold's assignee.